Filed 5/16/25  In re I.B. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re I.B., a Person Coming Under the Juvenile Court Law. | B336302 (Los Angeles County Super. Ct. No. 18CCJP00047B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. L.P., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Tiana J. Murillo, Judge.  Conditionally reversed and remanded.

Emily Uhre, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Bryan Mercke, Deputy County Counsel, for Plaintiff and Respondent.

---

## I.    INTRODUCTION

Mother L.P. (mother) appeals from an order terminating dependency jurisdiction and ordering a guardianship of I.B. (the child). Mother's sole argument on appeal is that the juvenile court and the Los Angeles County Department of Children and Family Services (Department) failed to comply with their initial inquiry obligations under the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) and related California statutes (Cal-ICWA; Welf. & Inst. Code[1], § 224 et seq.). We conditionally reverse for further ICWA inquiry of maternal relatives.

---

[1]    Further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

## II.  BACKGROUND[2]

In December 2021, the Department received a referral alleging general neglect of the child by mother and emotional abuse of the child by the child's father I.B., Sr. (father).

On February 22, 2022, mother advised the Department that neither she nor father had any Indian ancestry.

On February 24, 2022, the Department filed a section 300 petition alleging that mother and father engaged in domestic violence in front of the child, and that mother had a history of substance abuse.[3]

On March 1, 2022, mother submitted an ICWA-020 form, Parental Notification of Indian Status (ICWA-020), in which she denied having any Indian ancestry.

In March 2022, the Department spoke with maternal grandmother in order to determine whether her home was suitable for placement of the child.  Maternal grandmother reported that she, maternal aunt L.P.1, maternal aunt T.P., a maternal uncle (who was then incarcerated), two maternal cousins, and a maternal great-uncle also lived in the home.  The record does not reflect that the Department asked maternal grandmother whether the child may be an Indian child.

---

[2]     Because the sole issue on appeal concerns compliance by the juvenile court and the Department with ICWA and Cal-ICWA, we limit our recitation of facts to those relevant to that compliance issue, except as is necessary for context.

[3]     The Department also alleged that the child's siblings were prior dependents of the court and received permanent placement services.

On March 1, 2022, the juvenile court found it "does not have a reason to know that [the child] is an Indian Child[.]"

On March 15, 2022, the Department filed a jurisdiction and disposition report stating that, according to mother, she had 11 siblings and had been raised by maternal grandmother. Mother again denied any Indian ancestry. The Department could not locate father for an interview and therefore referred to a 2016 social study regarding the child's older sibling. That social study reflected that father had been raised by paternal grandmother, who was deceased. Paternal grandfather, who was then incarcerated, had never lived with father. Father also previously lived with a paternal great-grandmother, who was deceased, and a paternal great-aunt. A paternal aunt, R.B., lived with paternal great-grandfather.

On May 4, 2022, the Department spoke with paternal aunt R.B., who denied any Indian ancestry.

On June 6, 2022, the Department interviewed father. Father reported having six siblings but declined to provide any contact information for any paternal relatives. He denied having a permanent telephone number and declined to provide his address to the Department. Father denied having Indian ancestry.

On August 5, 2022, father submitted an ICWA-020, denying Indian ancestry.

On September 9, 2022, the juvenile court sustained the domestic violence allegations in the section 300 petition.

On October 6, 2022, the juvenile court declared the child a dependent of the court, removed him from the parents' custody, and bypassed reunification services for both parents. The court then set the matter for a permanent planning hearing. The court

again found there was no reason to know that the child is an Indian child.

On October 26, 2022, father again denied having any Indian ancestry.

On December 7, 2022, paternal great-aunt T.B. filed a Relative Information, form JV-285, which included her contact information.

On February 12, 2023, the Department interviewed maternal aunt K.J., who denied any Indian ancestry. K.J. stated that she "maintain[ed] family connections with her siblings and their children."

On May 9, 2023, the Department interviewed maternal aunt W.J., who denied Indian ancestry.

On May 26, 2023, mother submitted a declaration, in which she provided the addresses and phone numbers of maternal aunts L.P.2 and E.S.

On June 27, 2023, mother again reported to the Department that she did not have any Indian ancestry.

On July 17, 2023, the juvenile court ordered the child placed with maternal aunt K.J., who was the legal guardian for the child's three siblings. Maternal aunt K.J.'s adult daughter A.G. also lived in the home.

On January 16, 2024, mother filed a section 388 petition requesting additional reunification services and custody of the child.

On February 1, 2024, the juvenile court denied mother's petition. The court ordered a permanent plan of legal guardianship for the child, appointed K.J. as the guardian, and terminated dependency jurisdiction. Mother timely appealed.

# III. DISCUSSION

## A. *ICWA Inquiry*

"The California Supreme Court recently addressed 'whether a child welfare agency's failure to make the statutorily required initial inquiry under California's heightened ICWA requirements constitutes reversible error.' (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1125.) It 'conclude[d] a judgment must be conditionally reversed when error results in an inadequate ICWA inquiry.' (*In re Kenneth D.*[ (2024)] 16 Cal.5th [1087,] 1094; see *In re Dezi C.,* [*supra*, 16 Cal.5th] at p. 1125.)

"'ICWA establishes minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes and does not prohibit states from establishing higher standards.' (*In re Dezi C., supra*, 16 Cal.5th at p. 1129; see 25 U.S.C. §§ 1902, 1921; *In re Y.W.* (2021) 70 Cal.App.5th 542, 551; *In re T.G.* (2020) 58 Cal.App.5th 275, 287.) '[W]hen ICWA applies, "the Indian child's tribe shall have a right to intervene at any point" in a proceeding involving the removal of an Indian child from their family.' (*In re Dezi C.,* [*supra*, 16 Cal.5th] at p. 1129; see also 25 U.S.C. § 1911(c); *In re Isaiah W.* (2016) 1 Cal.5th 1, 8.)

"To ensure tribes have the opportunity to exercise their rights in dependency proceedings, an investigation of a family member's belief a child may have Indian ancestry must be undertaken and notice provided, where appropriate, to the relevant tribes. (See § 224.2, subd. (a) [imposing on the court and child protective services agencies 'an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child'].)

6

"The duty to inquire "'begins with initial contact (§ 224.2, subd. (a)) and obligates the juvenile court and child protective agencies to ask all relevant involved individuals whether the child may be an Indian child.'" (*In re Rylei S.* (2022) 81 Cal.App.5th 309, 316; see § 224.2, subds. (a)–(c).)  The duty of inquiry also extends to the juvenile court, which is required to 'ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child.'  (Former § 224.2, subd. (c); see also 25 C.F.R. § 23.107(a) ['[s]tate courts must ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child'].)

"The Department's duty of '[i]nquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.'  (Former § 224.2, subd. (b)[4]; see [Cal. Rules of Court,] rule 5.481(a)(1) [the

---

[4]    The current version of section 224.2, subdivision (b) provides:  "(1)  The duty to inquire begins for a county when first contacted regarding a child, including, but not limited to, asking a party reporting child abuse or neglect whether the party has any information that the child may be an Indian child, and upon a county department's first contact with the child or the child's family, including extended family members as defined in paragraph (1) of subdivision (c) of Section 224.1.  At the first contact with the child and each family member, including extended family members, the county welfare department or county probation department has a duty to inquire whether that child is or may be an Indian child.

Department 'must ask the child, if the child is old enough, and the parents, Indian custodian, or legal guardians, extended family members, others who have an interest in the child, and where applicable the party reporting child abuse or neglect, whether the child is or may be an Indian child']; *In re Y.W., supra*, 70 Cal.App.5th at pp. 551–552.)

"ICWA and Cal-ICWA define 'extended family member,' if not separately defined by the law or custom of the Indian child's tribe, as 'a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent.' (25 U.S.C. § 1903(2); see § 224.1, subd. (c) [providing 'extended family member' follows definition stated in ICWA].)" (*In re T.R.* (2024) 107 Cal.App.5th 206, 218–219.)

---

"(2) If a child is placed into the temporary custody of a county probation department pursuant to Section 307, or received and maintained in temporary custody of a county welfare department pursuant to paragraph (1) of subdivision (a) of Section 306, or taken into or maintained in the temporary custody of a county welfare department pursuant to paragraph (2) of subdivision (a) of Section 306, or if they were initially taken into protective custody pursuant to a warrant described in Section 340, the county welfare department or county probation department has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (See Stats. 2024, ch. 656, § 3, eff. Sept. 27, 2024.)

"The juvenile court's factual finding that ICWA does not apply is 'subject to reversal based on sufficiency of the evidence.' (§ 224.2, subd. (i)(2).)" (*In re Dezi C., supra*, 16 Cal.5th at p. 1134.) We will "review[] for substantial evidence whether there is reason to know a minor is an Indian child, and review[] a finding of due diligence and proper inquiry for abuse of discretion." (*In re Kenneth D., supra*, 16 Cal.5th at p. 1101; but see *ibid*. ["some courts have applied a standard substantial evidence test, 'which requires us to determine if reasonable, credible evidence of solid value supports the court's' ICWA finding"].)

"[T]he juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review. [Citations.] '"On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes."' [Citations.] [¶] If, upon review, a juvenile court's findings that an inquiry was adequate and proper and ICWA does not apply are found to be supported by sufficient evidence and record documentation as required by California law ([Cal. Rules of Court, ]rule 5.481(a)(5)), there is no error and conditional reversal would not be warranted even if the agency did not inquire of everyone who has an interest in the child. On the other hand, if the inquiry is inadequate, conditional reversal is required so the agency can cure the error and thereby safeguard

9

the rights of tribes, parents, and the child." (*In re Dezi C., supra*, 16 Cal.5th at p. 1141.)[5]

B.    *Analysis*

Mother contends that the Department's ICWA inquiry was inadequate.  According to mother, the Department unreasonably failed to ask maternal grandmother, maternal aunt L.P.2, and maternal aunt E.S. about possible Indian ancestry.  It also failed to gather additional information about maternal aunts L.P.1 and T.P., who were mentioned in the record, and did not interview a maternal uncle, maternal cousins, and a maternal great-uncle. Mother also contends the Department failed to conduct an

---

[5]    Four California Supreme Court justices also agreed that section 224.2, subdivision (b) does not "requir[e] that an initial Cal-ICWA inquiry be made of every member of a child's extended family, including every first and second cousin, every single niece and nephew, all aunts and uncles, all siblings-in-law, plus every other person who has an interest in the child.  [Citation.]  Such a reading is 'absurd at best and impossible at worst' [citation] and 'creates an open-ended universe of stones, the rule ostensibly empowers the party to obtain a remand to question extended family members, then a second remand to question the family babysitter, and then a third remand to question longtime neighbors, and so on and so on.'  [Citation.]  . . .  [¶]  The better reading is that the '"includes, but is not limited to"' language tells us that these are '*examples* of the categories of people a social services agency or court should inquire of.'  [Citations.]" (*In re Dezi C., supra*, 16 Cal.5th at pp. 1167–1168, fn. omitted (dis. opn. of Groban, J.); *id.* at p. 1153 (conc. opn. of Kruger, J.) ["I write separately, however, to express my agreement with part II. of the dissenting opinion on the threshold question of what constitutes an adequate initial inquiry under Cal-ICWA"].)

10

adequate inquiry of paternal relatives as it did not attempt to contact five of father's siblings, paternal grandfather, or paternal great-aunt.[6]

We reject mother's contention that the Department did not conduct an adequate inquiry of paternal relatives. Father and paternal aunt R.B. both denied Indian ancestry, and father refused to provide any contact information for paternal grandfather or father's other siblings. "Where, as here, a parent largely fails to cooperate with [the Department] or to provide names and contact information for extended family members, [the Department's] ability to conduct an exhaustive ICWA inquiry necessarily is constrained." (*In re Q.M.* (2022) 79 Cal.App.5th 1068, 1082.)

We agree, however, with mother's contention that the Department failed to conduct an adequate initial inquiry of maternal relatives. Although maternal aunt K.J., maternal aunt W.J., and mother all denied Indian ancestry, the Department also had contact with, but failed to ask, maternal grandmother whether the child had Indian ancestry. The Department contends that because maternal aunt K.J. "maintained family connections with her siblings," the Department was not required to undertake any further inquiry of maternal relatives, including maternal grandmother. We disagree. Although the Department was not required to interview every extended family member referenced in the record (*In re Dezi C., supra*, 16 Cal.5th at p. 1141), here, it should have asked maternal grandmother about possible Indian heritage. Even though K.J. maintained contact

---

[6] Maternal great-uncle and paternal great-aunt are not "extended family members" for purposes of ICWA inquiry. (See 25 U.S.C. § 1903(2); § 224.1, subd. (c).)

with her siblings, it is reasonable to assume that maternal grandmother had more information about her own heritage than did K.J. or maternal grandmother's other children. Accordingly, the juvenile court's implicit finding that the Department conducted an adequate ICWA inquiry of maternal relatives is not supported by substantial evidence. (Cf. *id.* at pp. 1126–1127 [inadequate ICWA inquiry when Department failed to inquire with, among others, paternal and maternal grandparents, despite speaking with them while investigating allegations underlying dependency petitions].)[7]

---

[7] The Department also argues, and mother agrees, that a conditional reversal of the order terminating dependency jurisdiction does not require a conditional reversal of the order appointing maternal aunt K.J. as legal guardian of the child. We agree. Under the terms of the guardianship order, mother's parental rights have not been terminated, and the guardianship remains within the juvenile court's jurisdiction, even after the termination of dependency jurisdiction. (§ 366.26, subd. (c)(4)(A) ["If the court finds that adoption of the child or termination of parental rights is not in the best interest of the child . . . , the court shall order that the present caretakers or other appropriate persons shall become legal guardians of the child"]; see *Dora V. v. Superior Court* (2024) 104 Cal.App.5th 987, 1003, fn. omitted ["The Legislature created a different statutory procedure for legal guardians appointed by the juvenile court. Such guardianships established pursuant to sections 366.26 or 360 remain within the jurisdiction of the juvenile court even after dependency jurisdiction has been terminated"].)

## IV.   DISPOSITION

The order terminating dependency jurisdiction is conditionally reversed.  The matter is remanded to the juvenile court with instructions to order the Department to make reasonable efforts to interview maternal grandmother about the child's possible Indian ancestry and to report to the court the results of those efforts.  Nothing in this disposition precludes the court from ordering additional inquiry of others having an interest in the child.  Based on the information reported, if the court determines that no additional inquiry or notice to tribes is necessary, the order terminating dependency jurisdiction is to be reinstated.  If additional inquiry or notice is warranted, the court shall make all necessary orders to ensure compliance with ICWA and Cal-ICWA.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM (D.), J.

I concur:

HOFFSTADT, P. J.

13

In re I.B.
B336302


BAKER, J., Dissenting


I would affirm the order terminating dependency jurisdiction. Under the deferential standard of review that applies, there is adequate support for the juvenile court's conclusion that the Los Angeles County Department of Children and Family Services undertook an inquiry that was adequate to reach a reliable conclusion that Cal-ICWA did not apply. (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1141 [a "juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review"]; see also *id.* at 1153 (conc. opn. of Kruger, J.), 1168 (dis. opn. of Groban, J.); *In re E.W.* (2023) 91 Cal.App.5th 314, 323.)


BAKER, J.